# SCOTT *v.* SCOTT.

PATENTS; INTERFERENCE.

In an interference proceeding, between an uncle, the senior party, and his nephew, the junior party, wherein the subject-matter in controversy was an improvement in the construction of thimbles for shoe-lasts, the testimony was reviewed and a decision of the Commissioner of Patents, awarding priority to the senior party as the first to conceive and reduce to practice was *affirmed.*

No. 175 Patent Appeals.  Submitted May 15, 1901.  Decided June 7, 1901.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Edison Bros.* for the appellant.

*Messrs. Howson & Howson* and *Mr. R. T. Frazier* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the acting Commissioner of Patents in an interference case, wherein the subject-matter of controversy is an improvement in the construction of thimbles for shoe-lasts.  The issue is defined in the following three counts:

"1. A thimble or lining for the spindle-socket of a shoe-last having at intermediate points in its length, and at diametrically opposite points, integral spurs or prongs the stems of which are adapted to extend into the bore of the thimble when it is being inserted in a socket to hold the points of said spurs inside of the outer face or surface of the thimble.

" 2. A thimble or lining for the spindle-socket of a last comprising a section of light metal tubing having at its upper end a flange adapted to conform accurately to the top surface of a last about the spindle-socket, and having in its tubular body portion spurs adapted to engage with the last surrounding the spindle-socket.

" 3. A thimble for the spindle-socket of a shoe-last, having integral spurs or prongs adapted to engage with the side walls of said socket at points above the lower end of the thimble."

In reference to the parties to this contest and the nature of the controversy, the examiner of interferences has this to say, which appears from the record:

" The parties to this interference have the same name, the only difference being in the spelling of the middle name of Emerson, the junior party spelling it with one ' m,' while the senior party spells it with two ' m's.' The record discloses that they are relatives, the senior party being uncle to the junior party. In order to avoid confusion in the consideration of the case, they will hereafter be referred to as uncle and nephew. From the testimony presented, it would seem that the question to be determined is one of originality rather than one of priority of invention."

The uncle, Scott senior, is the senior party to the interference, having been the first to come to the Patent Office, where he filed his application on May 10, 1898. In his preliminary statement he claims to have conceived the invention in question about December 25, 1893, at which time also he states that he exhibited a paper model and made disclosure of it to others. He alleges that he made a metal thimble containing the improvement about October 1, 1897; that, about the middle of October, 1898, a thimble embodying the invention was first placed in a last and the last used; that, during the month of December, 1898, a machine was made to construct such thimbles, and such thimbles were then actually made; and that there has been no use of the invention further than to test the availability of a few of the thimbles mentioned.

The nephew, Scott junior, filed his application in the Patent Office on February 11, 1899, which was about nine months after the uncle's application. He filed three statements, one of them before the uncle's statement was filed, and two of them after that time, and presumably after the contents of the uncle's preliminary statement had become known to him. In his preliminary statement first filed he alleged that he had conceived the inventions set forth in the first and third counts of the issue, explained them to others, and made drawings and a model of them, between the years 1886 and 1889; that about a month thereafter the same had been successfully tested; that he has since continued to use them, but that he had not manufactured any for use and sale; that he had conceived the invention of the second count of the issue about October 27, 1897; that about the same day he had made drawings of it, explained it to others, made a model, and successfully tested it; that about January 4, 1898, the improvement was successfully tested and operated; and that he had since then continued to use it, but had not manufactured it for use and sale.

The second statement, which he calls a supplemental statement, differs from the first only in an allegation that, on January 4, 1898, all three of the improvements in the several counts mentioned, were jointly and successfully operated and tested, while the first statement confined such test and operation of January 4, 1898, to the specific invention of the second count of the issue.

The third statement, which is designated as an amended preliminary statement, changes the date of the conception, explanation, and successful test of the invention of the second count from October 27, 1897, to September 27, 1897.

Testimony was taken; and upon this testimony the examiner of interferences decided in favor of the nephew, Scott junior. This decision was reversed by the board of examiners-in-chief, who awarded judgment of priority of invention to the uncle, Scott senior; and the decision of the board was affirmed by the Commissioner of Patents.

From the decision of the Commissioner the nephew, John Emerson Scott junior, has appealed to this court.

A great part of the testimony in this case is irrelevant, immaterial, and utterly useless for the elucidation of the substantial issue between the parties. This is especially true of the testimony in rebuttal, which might well have been wholly omitted from the record. A large part of the examination of the witnesses is devoted to an explanation of the contract relations between the senior applicant in the cause, the uncle, and Mr. J. Leslie Rodgers, who had first entered into combination with the uncle to exploit his invention, and who had afterward transferred his assistance to the nephew, without any sufficient cause for the transfer apparent on the record; but these contract relations and the controversies growing out of them are all collateral matters, wholly independent of the issues here involved and serving to throw little or no light on these issues.

Then the record is further complicated with useless and irrelevant controversies between counsel, and explanations and recriminations that serve no useful purpose. Moreover, the contest is a family controversy: it is between uncle and nephew: the intimation is that either one has pirated the invention of the other: and the only substantial witnesses are members of the respective families of the parties and relatives of each other — on the side of the uncle, his sister-in-law and her husband; on the side of the nephew, his father and one of his brothers. The result is that the testimony is remarkably conflicting, and the matter of controversy is left in the greatest obscurity. And yet it would appear that it ought not to have been difficult to throw a more satisfactory light on the subject.

As stated, there are three counts in the issue. With reference to two of these, those numbered 1 and 2, we can have no hesitation in affirming the decision of the Patent Office which awards judgment of priority of invention to John Emmerson Scott, the uncle and the senior applicant in the cause. The testimony of the nephew wholly fails to show any conception by him of the subject-matter of these two counts, or of either of them, at any time before the filing of his application. In fact, we understand that the invention of

count numbered 1 of the issue has been virtually conceded to the uncle. We will dismiss both these counts from further consideration.

Count numbered 3, which is more general than count No. 1, and which may be said to embrace it, as a generic does a specific invention, may be regarded as the only thing here in controversy. It is for a thimble with spurs in the sides adapted to engage with the side walls of the spindle-socket of the last, while count 1 requires these spurs to be at diametrically opposite points, and to extend within the bore of the thimble.

After a minute and elaborate investigation of the junior applicant's testimony and numerous exhibits filed by him, the board of examiners of the Patent Office came to the conclusion, in which we concur, that in no one of his models and exhibits, except one designated as "Exhibit No. 11," was the invention of the third count of the issue embodied. It is unnecessary for us to go over that ground again. We are entirely satisfied with the analysis of the record made by the board, in consequence of which this conclusion was reached. But the junior applicant's "Exhibit No. 11" does embody the invention in controversy; and it is sufficiently proved that this exhibit was made and shown, and the invention, therefore, disclosed by him in July of 1895.

But it is proved with at least equal or greater sufficiency that the senior applicant had the same invention in 1893, and that he reduced it to practice in September of 1897, while it would seem that the junior applicant had never reduced it to practice before the filing of his application. Assuming, therefore, that the testimony of the parties, other than the applicants themselves, is entitled to equal credit on both sides — and we find no reason to refuse it to them — we find that the uncle's conception of the invention antedated that of the nephew by about two years. And, as there is no question here of undue delay or want of due diligence, it is very plain to us that there is no apparent error in the award of judgment of priority of invention to the senior applicant.

Then again, the circumstances and conduct of the parties, as evidenced by the record, all tend to warrant the same conclusion. The germ of the invention beyond question belonged to the uncle, and not to the nephew. The latter admits that his own efforts in the field of invention had been superinduced by a knowledge of his uncle's device; and, indeed, the conceded fact that the uncle filed a *caveat* in 1890 for an invention, which, although not that of the issue, yet led up to it, is sufficient to raise a presumption, not very strong, it is true, but yet a presumption, in favor of the uncle's priority. More important, however, is the fact that, when in May of 1898 the uncle informed the nephew that he had applied for a patent on the invention, yet the nephew made no protest, and signified neither by word nor by act that the invention was his own. Then, if ever, he should have spoken. He seeks to excuse his silence on two grounds — one, that he relied on his uncle's assurances to make the matter all right with him; and the other, that he feared that his uncle, who was foreman over him in the shop in which both were employed, would discharge him in the event that he complained. Both excuses are unsatisfactory. The record discloses no just ground for the apprehension that he would be discharged; he was not discharged when he made his application in this case. And if his reliance on his uncle's assurance that he would make things all right with him, was a factor in inducing him to remain silent in May of 1898, it is not apparent why it should not have been equally potent in February of 1899, when he filed his application, and when, so far as the record shows, nothing had happened in the meantime to shake his reliance. It is not difficult to find a motive in the record for the change of attitude; but it is not made apparent to us that the change was warranted by any change in the uncle's course of conduct.

We have not deemed it necessary to analyze at any length the great mass of testimony in this case. This has been satisfactorily done by the tribunals of the Patent Office. We think that the case can be properly disposed of on the salient facts which we have noted.

It is our conclusion that there was no error in the decision of the Commissioner of Patents in the premises, whereby he awarded judgment of priority of invention on all the counts of the issue to the senior applicant, John Emmerson Scott, the uncle; and that this decision should be *affirmed.*

*The clerk of the court will certify this opinion, and the proceedings in this court in the premises, to the Commissioner of Patents according to law.*

A motion for a rehearing was overruled.